UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>SCOTT HOWARD KIMBALL (1),<br><br>Defendant/Petitioner. | Case Nos.: 15CR0902-JLS<br>           19CV1767-JLS<br><br>**ORDER:**<br><br>**1) DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 USC § 2255;**<br><br>**2) DENYING CERTIFICATE OF APPEALABILITY;**<br><br>**3) DENYING MOTION TO COMPEL DISCOVERY; and**<br><br>**4) DENYING SUPPLEMENTAL RULE 6 MOTION**<br><br>**[ECF Nos. 200, 207 and 209]** |

Presently before the Court are Defendant Scott Howard Kimball's Motion to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody pursuant to 28 U.S.C. § 2255 (ECF No. 200), Defendant's Motion to Compel Discovery (ECF No. 207), and Defendant's Supplemental Rule 6 Motion (ECF No. 209). The Government has filed a Response in Opposition to Defendant's Section 2255 Motion (ECF No. 202), and Defendant has filed a Rebuttal to the Government's Response (ECF No. 204). The Court has considered these

1

submissions, the applicable legal authority, and the record in this case and, for the reasons set forth below, will deny Defendant's motions.

## BACKGROUND

Defendant Scott Howard Kimball and a Codefendant, Amanda Lee Garcia, were charged with interference with commerce by robbery in violation of 18 U.S.C. § 1951. ECF 17. The charge stemmed from the robbery of a United State Post Office in the Rancho Bernardo neighborhood of San Diego on January 21, 2015. Complaint, ECF 1, at 2. Codefendant Garcia entered a guilty plea to a superseding information charging her with accessory after the fact to the robbery. ECF 32, 34. Defendant Kimball entered a plea of not guilty and a jury trial was commenced on October 19, 2015. After two days of testimony and evidence, including Codefendant Garcia's testimony implicating Defendant Kimball as the robber, the jury returned a guilty verdict on October 21, 2015. ECF 91.

Defendant's trial counsel filed a motion for new trial alleging a *Brady* violation and concurrently filed a "Declaration Re: Conflict" indicating that Defendant Kimball sought to purse a claim of ineffective assistance of counsel during trial and requesting the appointment of new counsel. ECF 113. Over the Government's objection, the Court appointed new counsel. ECF 126. Defendant subsequently filed a second motion for new trial on the grounds that his trial counsel was ineffective. ECF 146. The Court denied both motions for a new trial, concluding that Defendant had not demonstrated prejudice resulting from either the alleged *Brady* violation nor the claimed instances of ineffective assistance of counsel. ECF 159. Defendant was sentenced to a term of 168 months' custody on October 7, 2016. ECF 180. Defendant filed an appeal of the judgment and, on October 28, 2010, the Ninth Circuit Court of Appeals issued a memorandum decision affirming Defendant's sentence. ECF 182, 196.

## ANALYSIS

In his Section 2255 motion, Defendant contends that he was denied effective assistance of counsel due to trial counsel's misconduct and failure to investigate. He

further maintains that relief is warranted due to an alleged *Brady* violation stemming from what he claims is a missing page of a "Computer-Aided Dispatch" ("CAD") report. Defendant has also filed a motion to compel discovery pursuant to Rule 6 of the Rules of Civil Procedure seeking production of the missing page of the CAD report and a supplemental Rule 6 motion seeking "chain of custody" evidence.

### 1. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, Defendant has the burden of showing that counsel's performance was deficient and that this deficient performance prejudiced Defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency of performance is established through a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The Court need not address both prongs if the Defendant makes an insufficient showing on one. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Here, Defendant contends his trial counsel provided ineffective assistance of counsel because of "serious acts of misconduct" allegedly committed by trial counsel. Mot. at 18. Regarding the first alleged act of misconduct, Defendant argues that his trial counsel deceived the Court by informing the Court during sidebar that counsel had been attempting to find two witnesses who would describe the robber as black (Utes/ Meyers) for "at least a week." *Id.* at 19. Defendant alleges that trial counsel misinformed the Court and had only been attempting to locate Utes / Meyers for one day. *Id.* Defendant alleges that this alleged deceit "conflicts with established Rules of Professional Conduct    [and]    is prejudicial to a client. *Id.* at 21. Similarly, Defendant also contends that his trial counsel

misled the Court when counsel informed the Court that they were attempting to serve a potential witness, Ms. Baker. *Id.* at 22. Defendant believes that trial counsel had no intention of locating and serving Ms. Baker. Accordingly, Defendant alleges that trial counsel violated the "Rules of Professional Conduct" and prejudiced Defendant as a result. *Id.* Defendant's second claim of ineffective assistance of counsel stems from trial counsel's failure to investigate Georgia Mizell, a "corroborating witness." *Id.* at 24.

The Government responds that Defendant has failed to prove either prong of the *Strickland* analysis. Response at 13. Regarding the first *Strickland* prong, the Government argues that Defendant has failed to meet his burden of demonstrating that trial counsel's decisions were unreasonable as opposed to a part of a "tactical strategy." *Id.* at 15. The prejudice prong of *Strickland* has also not been established, the Government contends, because the evidence Defendant wanted trial counsel to produce through witness testimony was already presented to the jury through stipulation and cross-examination. *Id.* at 17. The Government argues that the value of such duplicative testimony is even further diminished by the fact that the jury was shown footage of the robbery coupled with the fact that Ms. Garcia testified that Defendant disguised his skin. *Id.* According to the Government, Defendant has failed to establish that he was prejudiced given the above and the plethora of condemning evidence the Government submitted to the jury. *Id.*

As an initial matter, the Court notes that many of Defendant's concerns regarding ineffective assistance of counsel were addressed by the Court previously when Defendant's motions for new trial were denied. *See generally* Order. Additionally, the Court is mindful of the fact that *Strickland* has established a "high bar" for relief. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). For the reasons set forth below, the Court remains persuaded that Defendant's trial counsel provided effective assistance of counsel.

Defendant first contends that trial counsel's alleged misstatements to the Court and consequent alleged violations of "Rules of Professional Conduct" constitute prejudice *per se*. Defendant has cited no authority supporting this proposition. Moreover, even if the

allegations of ethical misconduct are taken as true, Defendant has failed to establish prejudice, that is, that the result of the trial would have been different absent the errors.

Defendant's individual claims of attorney professional misconduct rest in the overall complaint that witnesses identifying the robber as a black male or as a person younger than the defendant were not brought to testify at trial. However, trial counsel *did* present evidence at trial that at least three witnesses to the robbery described the perpetrator as being a black male. Although this evidence was presented through stipulation and cross-examination of the case agent, the jury was aware that several witnesses had described the robber as a black male or a young black male. Any further benefit to be gained through additional testimony regarding the discrepancies between eyewitness descriptions of the robber is vastly exaggerated by Defendant, given the circumstances of this case. The evidence at trial, which included video surveillance footage of the robbery and the robber from multiple vantage points, established that the robber undertook significant efforts to conceal himself. Victims and eyewitnesses described the robber as being "covered from head to toe," wearing a hoodie, sunglasses, gloves, and long baggy shorts with knee socks. Codefendant Garcia testified that prior to the robbery, Defendant painted his exposed skin with black face paint stolen from Party City. Thus, the fact that witnesses had difficulty uniformly describing the physical characteristics of the robber is not particularly surprising, and not particularly useful because this was simply not a case which rested on the strength of eyewitness identification testimony. None of the testifying witnesses, other than Codefendant Garcia, identified Defendant Kimball as the robber. Furthermore, the jurors could view for themselves the appearance of the robber from the surveillance footage. Thus, the Court is not persuaded that pointing out additional discrepancies in various eyewitness identifications of the robber would have had any impact on the result of the proceedings.

Defendant's second claim of ineffective assistance of counsel stems from defense counsel's alleged failure to interview witness Georgia Mizell. Three weeks after the

robbery, Ms. Mizell was stopped by police while driving the vehicle used in the robbery. Ms. Mizell was held as a material witness for the trial, but the Government ultimately decided not to call her as witness. Defendant suggests that trial counsel should have interviewed Ms. Mizell to determine why the Government "was not going to call their own key corroborating witness." Mot. at 26. Defendant posits that if trial counsel had interviewed Ms. Mizell, and if she so happened to recant her pre-trial statements concerning Defendant's involvement in the robbery, then prejudice to Defendant would exist. *Id.* at 28. This speculation, however, is insufficient to support of claim of ineffective assistance of counsel. *See, e.g., Shah v. United States*, 878 F.2d 1156, 1161 (explaining that mere conclusory allegations are insufficient to warrant an evidentiary hearing regarding ineffective assistance of counsel claim). Accordingly, Defendant has failed to demonstrate that his trial counsel's performance amounted to ineffective assistance of counsel.

### 2. *Brady* Violation

"To establish a *Brady* violation, the evidence must be (1) favorable to the accused because it is either exculpatory or impeachment material; (2) suppressed by the government, either willfully or inadvertently; and (3) material or prejudicial." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004). "Failure to disclose information only constitutes a *Brady* violation if the requested information is 'material' to the defense." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995); *United States v. Bundy*, 968 F.3d 1019, 1039 n.7 (9th Cir. 2020) ("[T]he materiality of evidence under *Brady* is an objective inquiry."). Information is considered 'material' when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 469—470 (2009).

Here, Defendant's *Brady* claim against the Government is based on the allegation that the Government's failed to disclose a page from the Computer-Aided Dispatch Report

1  ("CAD Report"). Mot. at 6-7. Defendant contends that the Government suppressed a
2  "key" page in which Officer Rawls allegedly entered into his CAD police radio that Ms.
3  DeGuzman provided a description of the robbery suspect's appearance. *Id.* at 29.
4  Defendant appears to believe that Ms. DeGuzman allegedly described the robbery suspect
5  as a 25–30-year-old black male to Officer Rawls, and that the Government suppressed this
6  page as a result. *Id.* at 30; Rebuttal at 5. Defendant argues that the information on the
7  allegedly missing page would have been favorable as it is exculpatory, and that it could
8  have been used as impeachment material. *See id*. at 29-32. Because Defendant is a 50-
9  year-old white man, Defendant contends that Ms. DeGuzman's alleged description of the
10 robber would have "turned the Government's theory of the case upside down." *Id.* at 30.
11 Additionally, Defendant believes that this information could have been used to impeach
12 Ms. DeGuzman as she denied at trial ever providing a description of the robber to the
13 police. *Id.* at 29-30. According to Defendant, the allegedly missing page would have
14 consequently been material to the defense as proof of such a description from Ms.
15 DeGuzman would have "likely led to an acquittal." *Id.* at 30.

16    The Government responds that there are no facts in the record to support that there
17 is a page missing in the document referred to by Defendant and that a clerical error could
18 have caused a misidentification of the number of pages included in the document.
19 Response at 19. The Government additionally argues that even if a page from the CAD
20 Report is missing, Defendant has nonetheless failed to demonstrate that the allegedly
21 missing page is exculpatory. *Id.* Because the contents of the allegedly missing page are
22 unknown, the Government contends that here are no facts suggesting that any information
23 on the allegedly missing page would have been favorable to Defendant. *Id.* The
24 Government additionally argues that even if there is a missing page that contains favorable
25 information to Defendant, Defendant has still failed to prove how such information would
26 have been material to the defense. *Id.* The Government points out that even if Ms.
27 DeGuzman described the robbery suspect as a young black male, other witnesses at trial
28

also described the suspect in such a manner. *Id.* Accordingly, the Government argues that the possibility that Ms. DeGuzman described the robbery suspect in such a manner does not demonstrate that the "result at trial would have been different" had such information been disclosed. *Id*; *Smith*, 565 U.S. at 75.

The Court agrees with the Government that Defendant has failed to demonstrate that the allegedly missing page would have been material to the defense. As acknowledged by both Defendant and the Government, the contents of the page in question are unknown. Mot. at 29; Response at 19. Even if Defendant is correct and the allegedly missing page contains a description from Ms. DeGuzman regarding the race and age of the robber, the Government correctly points out that this information would have been cumulative. Response at 19. Evidence that witnesses described the robber as being a young, black male was presented at trial through cross-examination and stipulation. Accordingly, the Court concludes that Defendant has failed to demonstrate that there is a "reasonable probability" that the jury's verdict would have been different had the information in the allegedly missing page come to light. *Smith*, 565 U.S. at 75. Defendant has therefore failed to show that the Government's alleged suppression "undermines confidence in the outcome of the trial." *Kyles v Whitley*, 514 U.S. 419, 434; Mot. at 31. Therefore, the Court concludes that Defendant has failed to establish that the Government committed any *Brady* violation.[1]

The Court notes that Defendant has filed a motion to compel discovery and a motion pursuant to Rule 6 of the Rules of the Civil Procedure seeking to obtain the missing page of the report from the San Diego Police Department. Because the Court is not

---

[1] Defendant additionally requests appointment of legal counsel to assist him in obtaining the CAD Report from San Diego Police Records Department. Rebuttal at 6. The Court has evaluated the likelihood of Defendant's success on the merits of his *Brady* claim as well as the complexity of the issues contained therein. *See Weygandt v Look*, 718 F.2d 952, 954 (9th Cir. 1983) (explaining that the Court must look to the merits and the complexity of the legal issues when determining whether counsel should be appointed). The Court is not persuaded that the interests of justice will be furthered given the lack of merit and complexity inherent in Defendant's *Brady* violation claim. Accordingly, the Court denies Defendant's request for the appointment of counsel.

persuaded that the contents of the allegedly missing page, even when viewed in the light most favorable to the defendant, would have had any impact on the jury's verdict, these motions will also be denied.

## CONCLUSION

Having carefully considered Defendant's Motion in view of the foregoing submissions, the applicable legal authority, and the record in this case, the Court finds the record sufficiently developed to conclusively show that Defendant is not entitled to relief. Accordingly, Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. Additionally, the Court **Denies** Defendant a certificate of appealability, as Defendant has not made a substantial showing that he has been denied a constitutional right. Finally, Defendant's Motion to Compel Discovery and Supplemental Rule 6 Motions are **DENIED.**

IT IS SO ORDERED.

Dated: September 7, 2022

Hon. Janis L. Sammartino
United States District Judge